UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTOINETTE C. TAYLOR,     :
             :
 Plaintiff,        :
             :
 v.           :  CASE NO. 3:24-cv-1041 (KAD)
             :
PHYLLIS A. FRAZIER,     :
             :
 Defendant.       :

## ORDER ON PENDING PRE-TRIAL MOTIONS

Currently pending before the Court are Plaintiff's Motion for Reconsideration, dkt. #115, Plaintiff's Motion to Compel Depositions and Production of Documents and for Sanctions, dkt. #119, Plaintiff's Motion for a Temporary Restraining Order, dkt. #120, Plaintiff's Motion for a Protective Order, dkt. #124, Defendant's Motion for a Protective Order, dkt. #126, and Plaintiff's Motion to Quash and for a Protective Order, dkt. #126-1. For the reasons that follow, the Court DENIES all motions.[1]

### I.  BACKGROUND

The Court begins with a recitation of the relevant facts. On or about January 3, 2024, an anonymous individual from Kentucky allegedly called the Norwalk Police Department and requested that the police conduct a wellness check on Defendant's daughter. (Dkt. #44 ¶ 5; Dkt. #87-1 at 12). Plaintiff alleges that Defendant told various third parties that Plaintiff, who resides in Kentucky, called the police on Defendant's daughter to do her harm. (Dkt. #44 ¶¶ 1, 5). Plaintiff then filed a defamation lawsuit against the Defendant alleging that the Defendant falsely told others that Plaintiff called the Norwalk Police Department on Defendant's daughter. (Dkt. #1.)

---

[1] As explained in this Order, the Court denies Defendant's Motion for a Protective Order, dkt. #126, as moot. All other motions are denied on their merits.

Because truth is a defense to a claim of defamation, Defendant has engaged in discovery to determine the identity of the anonymous caller. (Dkt. #105 at 1.) Defendant obtained an audio recording of the telephone call to the police and has asserted that the anonymous caller "sounds exactly like Plaintiff." *Id.* at 1. Over Plaintiff's objections, Defendant also obtained records from the Norwalk Police Department which identified the telephone number of the anonymous caller[2]; Defendant asserts that the phone number is an exact match to the phone number Defendant has saved for Plaintiff. *Id.*

As discovery progressed, Defendant sought Plaintiff's telephone records for the date of the disputed call to the police to "remove all doubt" that Plaintiff is the anonymous caller.[3] (Dkt. #105 at 1.) After each party briefed and argued the issue, the Court ordered Plaintiff to produce her telephone records for the date of the disputed call, which is January 3, 2024. (Dkt. #84 at 24-25 and n.13.) Notwithstanding the order, Plaintiff initially refused to produce her telephone records, prompting Defendant to file another motion to compel Plaintiff to produce the records.(Dkt. #87 at 1.) In response, Plaintiff moved for a protective order to avoid producing her telephone records for January 3, 2024. (Dkt. #90.) On February 11, 2026, the Court granted Defendant's motion to compel the production of Plaintiff's telephone records and denied Plaintiff's motion for a protective order, and in doing so noted that Plaintiff "may not re-litigate an issue that has been decided by this Court." (Dkt. #96 at 5.)

Thereafter, Plaintiff submitted a declaration, dated February 18, 2026, which stated that Plaintiff "personally talked with [her] cellular company representative" and the representative "confirmed that they do not maintain telephone logs/records after 100 days and/or two months"

---

[2] Plaintiff filed a motion to quash the subpoena that Defendant served on the Norwalk Police Department. (Dkt. #89.)
[3] In reciting this portion of the background, the Court emphasizes that it takes no position on the caller's identity.

and thus her telephone records do not exist. (Dkt. #100 at 14.) To follow up on Plaintiff's assertion regarding the unavailability of her telephone records, Defendant served a Second Set of Interrogatories on Plaintiff, seeking the identity of the "company representative" and "cellular company" with which Plaintiff personally spoke. (Dkt. #105 at 6-7.) Plaintiff objected on various grounds and otherwise asserted that she "cannot recall each company representative" with which she spoke  and she "cannot know the cellular company" that she called. *Id.* at 7.

Thereafter, Defendant independently determined that Plaintiff's telephone number may be affiliated with AT&T Corporation, LLC and served a subpoena on AT&T "to obtain any records of calls by Plaintiff's telephone number on January 3, 2024." (Dkt. #126 at 3.) In response, Plaintiff moved to quash the subpoena (thus attempting to quash the very records this Court ordered her to obtain and produce to the Defendant). (Dkt. #126-1.)

Given the pending discovery disputes, Defendant sought and received an extension of the discovery deadlines. (Dkts. #105, 107.) Plaintiff now moves this Court to: (1) reconsider the Court's decision to extend the discovery deadline; (2) reconsider the denial of Plaintiff's motions for sanctions related to Plaintiff's motion to quash the subpoena that was served on the Norwalk Police Department, and led to the discovery of the anonymous caller's phone number; (3) compel depositions and the production of certain documents; (4) issue a temporary restraining order against Defendant and defense counsel; (5) issue a protective order that would prevent Plaintiff from having to identify information regarding her cellular phone company; and (6) quash the subpoena that Defendant served on AT&T in connection with the telephone records. (Dkts. #115, 119, 120, 124, 126-1.) All motions are ripe for consideration.

II.     PLAINTIFF'S MOTION FOR RECONSIDERATION

The Court begins with Plaintiff's Motion for Reconsideration. On April 6, 2026, Plaintiff moved for "emergency relief" and reconsideration of the following two Court orders: (1) order

granting Defendant's Motion for Extension of Time to Complete Discovery, dkt. #107, and (2) order denying Plaintiff's Motion for Sanctions and Motion for Sanctions against Opposing Counsel , dkt. #108. (Dkt. #115.) The Second Circuit Court of Appeals has made clear that "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Importantly, a motion for reconsideration is not a "vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation and internal quotations omitted).

The Court first considers Plaintiff's request for reconsideration of the order granting Defendant's Motion for Extension of Time to complete discovery, dkt. #107. (Dkt. #115 at 1.) In support, Plaintiff argues that the Court did not consider her objection before granting the extension. (Dkt.#115-1 at 2.) However, the Local Rules for the U.S. District Court for the District of Connecticut make clear that "[t]he Court may rule on the motion [for extension of time], *without notice*, before expiration of the period ordinarily permitted for filing opposition papers, notwithstanding a report of objection." D. Conn. L. Civ. R. 7(b)(2) (emphasis added). Thus, the timing of the Court's decision to grant the request to extend the discovery deadline was not inconsistent with the Local Rules. When the Court granted the extension, it was clear to the Court that the parties had several ongoing discovery disputes that needed to be resolved. Thus, there was good cause to grant the requested extension.

The Court next considers Plaintiff's request for reconsideration of the order denying her Motion for Sanctions and Motion for Sanctions against Opposing Counsel (hereinafter "Sanctions Order"). (Dkt. #115 at 1.) In support of this portion of the Motion for Reconsideration, Plaintiff

4

argues – in a similar vein – that the Court ruled without considering her reply. (Dkt. #115-1 at 2.) Again, the Court directs Plaintiff to the Local Rules, which provide that, "[t]o expedite a decision or for other good cause, the Court may rule on a motion before expiration of the period ordinarily permitted for filing opposition papers." D. Conn. L. Civ. R. 7(a)(4). And, as noted by the Honorable Janet C. Hall, "surely if the court can act on a motion before the other side has had any chance to respond, the court can act for good cause before the moving party has an opportunity to file a reply brief." *United States v. Andrews*, No. 3:20-CV-1300 (JCH), 2021 U.S. Dist. LEXIS 88263, at *5 (D. Conn. May 8, 2021).

Here, the Court determined that there was good cause to issue its Order regarding the motion for sanctions prior to receiving Plaintiff's reply.  Because the Second Circuit has made clear that reconsideration is not a "vehicle for relitigating old issues," the Court will not relitigate the merits of the Order regarding sanctions. *Analytical Surveys, Inc.*, 684 F.3d at 52. Nonetheless, the Court notes that both of Plaintiff's Motions for Sanctions were based on Plaintiff's theory that the Defendant was failing to comply with discovery orders and procedural rules. *See* dkts. #97, 99. Given the Court's determination that the Defendant was complying with the procedural rules and the Court's orders, such that sanctions against the Defendant were unwarranted, there was no need for the Court to delay its ruling. Although Plaintiff disagrees with this Court's Sanctions Order, dkt. #108, Plaintiff has failed to show that reconsideration is warranted. Plaintiff's Motion for Reconsideration, dkt. #115, is DENIED.

III.    PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS AND DOCUMENTS

The Court next considers Plaintiff's Motion to Compel. Plaintiff's moves the Court to compel Defendant to produce certain witnesses for depositions and to produce documents related to those depositions. (Dkt. #119.) The Court begins with Plaintiff's request to compel the Defendant to produce two non-party witnesses to be deposed by Plaintiff. Plaintiff refers to the

non-party witnesses, Ms. Dubose and Ms. Macon, as "Defendant's Third-Party Witnesses." *See* dkt. #119 at 2-3. Defendant states that she is under no obligation to produce those two non-party witnesses for deposition. (Dkt. #122 at 1.) The Court agrees; it is not the Defendant's responsibility to produce a non-party witness for deposition. *See, e.g.*, *Aasir Azzarmi v. Market*, No. 20-CV-6835 (GBD) (BCM), 2022 U.S. Dist. LEXIS 149791, at *3 (S.D.N.Y. Aug. 17, 2022) (noting that "[d]efendants are under no obligation to produce a non-party former employee for deposition"). If Plaintiff wishes to depose Ms. Dubose and Ms. Macon, she must serve them in accordance with Rule 45(b) of the Federal Rules of Civil Procedure.[4] Plaintiff's Motion to Compel is denied insofar as it relates to the two non-party witnesses.

Plaintiff also moves to compel the deposition of Defendant. (Dkt. #119 at 1-4.) In support, Plaintiff claims that she has repeatedly attempted to depose Defendant with no success. *Id.* The Court briefly summarizes the relevant chronology: Plaintiff claims that on February 19, 2026, she noticed Defendant's deposition for March 9, 2026 and Defendant "failed to attend" the deposition. (Dkt. #119 at 2; dkt. #119-1 at 8.) However, later in the Motion to Compel, Plaintiff states that on February 27, 2026, defense counsel acknowledged the March 9, 2026 deposition notice but implemented a "delay tactic" to avoid the deposition. (Dkt. #119 at 3.) The purported "delay tactic" appears to be a letter from defense counsel to Plaintiff stating that defense counsel is unavailable on March 9, 2026, but proposing a new deposition date of March 13, 2026. *Id.* at 26. Plaintiff then sent a letter to defense counsel dated March 4, 2026, stating that the deposition "has been postponed." (Dkt. #122-1 at 14.)

Plaintiff also claims that she has attempted to meet and confer with defense counsel to address the issue, but defense counsel "has refused." (Dkt. #119 at 3-4.) Defendant's response

---

[4] While Plaintiff attaches two subpoenas and deposition notices to her Motion to Compel, dkt. #119-1 at 12-28, there appears to be no proof of service of those documents as required under Rule 45(b).

paints a different picture. On March 21, 2026, Plaintiff sent a letter to defense counsel requesting a "meet and confer" session. (Dkt. #122-1 at 15.) In response, defense counsel proposed several dates to meet and confer, and stated that, given the lengthy history of disagreements, defense counsel would only speak with Plaintiff via recorded telephonic or video conference. (Dkt. #122-1 at 18.) Plaintiff refused. *Id.* at 19. Given the impasse, the Court imposes the following order:

Plaintiff's Motion to Compel is denied insofar as it pertains to Defendant's deposition. Likewise, after careful consideration of the history of discovery disputes, the Court orders the parties to meet and confer via Zoom or another video conference platform and to **record the meeting**. If a future discovery motion is filed by either party, the relevant meet and confer recording shall be submitted as an attachment.[5] The Court will not consider future discovery motions absent a recording of the corresponding meet and confer(s). *See Spann v. J.C. Penny Corp.*, No. SA CV 12-215 FMO (RNBx), 2013 U.S. Dist. LEXIS 190973, at *2-*3 (C.D. Cal. July 15, 2023) ("For all future motions in this action, counsel for the parties shall meet and confer and the meet and confer(s) must be transcribed by a court reporter. If the transcript(s) of the meet and confer(s) do(es) not demonstrate a good faith effort by the parties to resolve each issue in dispute, the motion will be denied and/or sanctions will be imposed for failure to participate in the meet and confer process in good faith."); *see also Ramos v. Drews*, No. 14 C 2556, 2016 U.S. Dist. LEXIS 206618, at *11 (N.D. Ill. April 26, 2016) (ordering the parties to "meet and confer face-to-face, on the record" to resolve a discovery dispute).

---

[5] As a logistical matter, the recording may be submitted to the Clerk's Office in an acceptable format. *See* Standing Order Regarding Submission of Audio and/or Video Content. If the moving party is unable to attach the recording (i.e., a technical difficulty), the Court will accept the submission from the non-moving party.

IV.    PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Next, Plaintiff moves for a temporary restraining order and preliminary injunction (hereinafter "Motion for Injunction") enjoining Defendant and defense counsel "from continual harassment, intimidation, unlawful contact through electronic mail(s) or outside telephone number(s), disparaging remarks, entering of property(s) . . . [and] destroying of disposing of any group chat text messages." (Dkt. #120 at 1.) Defendant opposes the Motion for Injunction, arguing that Plaintiff fails to meet the standard, that Plaintiff's complaints of harassment are unsubstantiated, and that the law already adequately protects against the destruction of evidence. (Dkt. #121 at 1-2.)

A temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Reidy*, 477 F. Supp. 2d 472, 474 (D. Conn. 2007). "The standard for entry of a TRO is essentially the same as for a preliminary injunction," *Free Country Ltd. v. Drennen*, 235, F. Supp. 3d 559, 565 (S.D.N.Y. 2016), and a "party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 3 F.3d 32, 37 (2d Cir. 2018)

The Court finds that Plaintiff, the movant, has not met the required standard and appears to confuse the purpose of a temporary restraining order and/or preliminary injunction. As a starting point, the purpose of a temporary restraining to is preserve "an existing situation *in statu[s] quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Warner Bros v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989) (citation

omitted). And "[t]he purpose of a preliminary injunction is . . . to preserve the relative positions of the parties" pending a final resolution of the merits. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 3 F.3d 32, 37-38 (2d Cir. 2018) (citation omitted). Here, the entirety of Plaintiff's Motion for Injunction appears to revolve around the alleged behavior by Defendant and defense counsel, and does not appear to implicate the merits of the underlying matter. It is thus unclear to the Court exactly what meritorious "status quo" Plaintiff seeks to maintain.

Nonetheless, starting with the first element, irreparable harm, Plaintiff provides no facts or legal authority to support her claim that she will face imminent, irreparable harm in the absence of an injunction. Plaintiff merely states in a conclusory fashion that, absent an injunction, Defendant and defense counsel "*may* continue harassment, intimidation, unlawful contact through electronic mail(s) . . . disparaging remarks, [and] entry of property." (Dkt. #120 at 2 (emphasis added).) Plaintiff also fails to offer any explanation for her delay in seeking emergency relief. Plaintiff initiated this action over two years ago and is just now seeking emergency injunctive relief, suggesting that any expected harm is not irreparable, not imminent, and not urgent. *See Carter v. Sewell*, No. 1:23-cv-1139 (LR) (RWL), 2023 U.S. Dist. LEXIS 194682 (S.D.N.Y. Oct. 31, 2023) (denying a temporary restraining order where plaintiff "waited over eight months" to move for such relief).

Turning to the second element, Plaintiff offers no analysis on her likelihood of success on the merits. Finally, Plaintiff fails to make a showing that it would be in the public's interest to grant the requested relief. Plaintiff is not entitled to a temporary restraining order and/or preliminary injunction. *See Cunningham v. Funding*, No. 19-CV-5480 (AJN), 2019 U.S. Dist. LEXIS 196176, at *2 (S.D.N.Y. Nov. 9, 2019) (denying a motion for a temporary restraining order where the

plaintiff's filing contained "no legal analysis or justification for why the [c]ourt should grant him injunctive relief").

Although Plaintiff is proceeding *pro se*, this does not "exempt [her] from compliance with relevant rules of . . . substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation omitted). For the aforementioned reasons, the Court DENIES Plaintiff's Motion for Injunction.

V.     PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

The Court next addresses Plaintiff's Motion for a Protective Order. (Dkt. #124.) Plaintiff moves for a protective order to relieve her of her responsibility of responding to Defendant's Second Set of Interrogatories; specifically, Plaintiff seeks to avoid responding to Defendant's request that Plaintiff identify her cellular phone company and the identity of the representative with whom she spoke when she attempted to obtain her cell phone records. (Dkt. #124.) Plaintiff argues that the discovery request is "excessive, abusive, retaliating, and harassing, and otherwise unduly burdensome and unfair." *Id.* at 1, 3. Plaintiff argues that identifying her cell phone company and its representative "will take a length of time" and will burden her with "long hours, days, and months of research." (Dkt. #124 at 3.) Defendant timely opposed Plaintiff's Motion for a Protective Order. (Dkt. #125.)

As background, Plaintiff submitted a signed declaration dated February 18, 2026, in which she claimed to have spoken with a representative of her cell phone company. (Dkt. #98 at 8.) According to the declaration, the representative of Plaintiff's cell phone company told Plaintiff that Plaintiff's cell phone records do not exist because they are not retained past "100 days and/or two months." *Id.* Noting that 47 C.F.R. § 42.6 appears to require such records to be retained for eighteen (18) months, the Defendant attempted to explore Plaintiff's statement by serving

interrogatories dated February 27, 2026. (Dkt. #105 at 2.). The interrogatories asked Plaintiff to identify the "company representative" with whom she spoke and the "'cellular company' at which each such person worked at the time of [Plaintiff's] conversation." *Id.* at 6-7.

In March of 2026, Plaintiff objected to Defendant's interrogatories on various grounds and claimed that she "cannot recall each company representative" with whom she spoke and "cannot know the cellular company." *Id.* at 7. Although Plaintiff argues that identifying the cellular company would burden her with "long hours, days, and months of research," dkt. #124 at 3, Plaintiff never articulates why it would take so much effort for her to identify her cell phone company.[6] Therefore, Plaintiff has not satisfied her burden of establishing that an undue burden exists, as required for the issuance of a protective order under Federal Rule of Civil Procedure 26(c). *See Scricca v. Boppy, LLC*, No. 3:22-cv-1497 (RNC), 2024 WL, 1211061 at *4 (D. Conn. Mar. 21, 2024) (noting that a claim of undue burden under Rule 26(c) typically must be accompanied by an affidavit or evidence disclosing the nature of the burden); *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2021 WL 4704852, at *4 (D. Conn. Oct. 8, 2021) ("To resist relevant discovery on grounds of undue burden, a party must ordinarily demonstrate that burden with an affidavit or other proof."). Plaintiff's Motion for a Protective Order is DENIED and she is required to fully respond to Defendant's Second Set of Interrogatories by May 15, 2026.

VI.    <u>PLAINTIFF'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER</u>

Finally, the Court addresses Plaintiff's Motion to Quash and for a Protective Order (hereinafter "Motion to Quash"), which is the latest in Plaintiff's string of efforts to avoid producing her telephone records. (Dkt. #126-1.) On May 1, 2026, Defendant filed a Motion for a Protective Order, dkt. #126 and attached a copy of Plaintiff's Motion to Quash as Exhibit A, dkt.

---

[6] As Plaintiff's declaration makes clear, Plaintiff was able to identify and speak with the very same cell phone company as recently as February of 2026. (Dkt. #100 at 14.)

#126-1. In that filing, Defendant requested that if Plaintiff has filed her Motion to Quash with the Court, then Defendant's Motion for a Protective Order "be treated as a Memorandum in Opposition." (Dkt. #126.) As of May 6, 2026, the Court still had not received Plaintiff's Motion to Quash. Therefore, to preserve Plaintiff's rights, the Court posted a notice on the docket informing the parties that the Motion to Quash had not yet been received, and instructing Plaintiff to notify the Court if she intends to proceed with the Motion to Quash. (Dkt. #127.) On May 7, 2026, Plaintiff informed the Court that the Motion to Quash was mailed to the Court on April 25, 2026. The Court therefore treats Exhibit A to Defendant's filing as Plaintiff's Motion to Quash,[7] and treats Defendant's filing as an Opposition to Plaintiff's Motion to Quash.[8] Plaintiff moves to quash the subpoena that Defendant served on AT&T to obtain any record of calls by Plaintiff's telephone number on January 3, 2024. (Dkt. #126-1.) Plaintiff argues that the subpoena request is frivolous, defective, and improper, and that defense counsel has been "disrespectful, disgraceful, and distasteful" in the course of this litigation. *Id.*

The Court first addresses Plaintiff's conclusory argument that the subpoena request is "frivolous." This argument is unavailing. On more than one occasion, this Court has ordered Plaintiff to produce the very same records addressed in the subpoena – that is, a record showing all calls made by the relevant telephone number for the date of January 3, 2024. The Court first ordered Plaintiff to produce these telephone records in a ruling issued on December 31, 2025. (Dkt. #84 at 25 and n.13.) In response, Plaintiff moved for a protective order to avoid producing the telephone records and this Court denied that motion in a decision dated February 11, 2026. (Dkt.

---

[7] In the event that the Court receives the document that Plaintiff mailed on April 25, 2026 and it is not identical to the one attached as Exhibit A, the Court will treat it as a new motion and rule on it in due course.
[8] In doing so, the Court denies Defendant's Motion for a Protective Order, dkt. #126, as moot.

#96 at 4-5.) In doing so, the Court noted that Plaintiff could not relitigate an issue that has already been decided. *Id.* Plaintiff's argument that the subpoena request is "frivolous" is unfounded.

Plaintiff also argues that the subpoena request is "defective and improper" for failing to receive "authorization and permission from the account holder(s)," and otherwise constitutes an impermissible "fishing expedition." Dkt. #126-1 at 4. These arguments fare no better. This Court has already rejected Plaintiff's arguments that the production of the telephone records infringes on the user's privacy rights. Dkt. #96 at 4-5. Likewise, it is not a fishing expedition if the Court has already determined that the requested information is relevant and discoverable, which this Court has now determined on multiple occasions. Plaintiff cannot prevent her phone company from producing the very records this Court ordered Plaintiff to obtain from the phone company and produce to the Defendant. Plaintiff's Motion to Quash is denied.

The Court cautions Plaintiff that, going forward, discovery non-compliance may result in sanctions.[9] Regarding Defendant's attempts to obtain the telephone records, Plaintiff's narrative has repeatedly changed. Plaintiff initially objected to producing her telephone records, prompting this Court to order Plaintiff "to produce her phone records for th[e] specific date." (Dkt. #84 at 25.) Plaintiff refused to provide the records, claimed that she did not have "ownership of shared records," and moved for a protective order against the production of her telephone records. (Dkt. #87-1 at 9; dkt. #90.) The Court denied the motion for a protective order, explained the concept of "custody and control" under the law, and ordered Plaintiff – once again – to "produce her telephone records for the date of January 3, 2024." (Dkt. #96 at 6.) Plaintiff then claimed that she called her

---

[9] Defendant previously requested sanctions under Rule 37. (Dkt. #86 at 6.) The Court deferred ruling on the request for sanctions and allowed Plaintiff an opportunity to respond. (Dkt. #96 at 9.) Plaintiff thereafter submitted a response opposing Defendant's request for sanctions. (Dkt. #100.) As of the date of this Order, the Court has not yet issued its ruling on Defendant's request for sanctions against Plaintiff for discovery misconduct.

"cellular company" and was informed by a representative that the telephone records do not exist because they are not retained past "100 days and/or 2 months." (Dkt. #100 at 14.) About one month later, Plaintiff claimed that she "cannot know" the identity of her cellular company and/or the representative that she spoke with and that it would take "months of research" to unearth this information. (Dkt. #124 at 3.) Most recently, Plaintiff moved to quash a subpoena that Defendant served on AT&T in an effort to obtain the same telephone records. Notably, Plaintiff's declaration asserts that she tried to obtain and produce these records by contacting her cell phone company, but her cell phone company informed her that the records no longer exist. (Dkt. #98 at 8.) In other words, Plaintiff now objects to the production of the very records she tried to obtain and produce to the Defendant to comply with this Court's order.

These tactics smack of litigation gamesmanship and will not be tolerated. The Second Circuit makes clear that "Rule 37 sanctions may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in a sanction." *SEC v. Setteducate*, 419 Fed. Appx. 23, 24 (2d Cir. 2011) (internal quotations and citation omitted). If not made clear before, the Court makes its warning clear now: if Plaintiff fails to comply with discovery directives of this Court, she may be subject to sanctions under Rule 37, including dismissal of this action with prejudice.

VII.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Reconsideration, dkt. #115, Motion to Compel Depositions and Production of Documents and Sanctions, dkt. #119, Motion for a Temporary Restraining Order, dkt. #120, Motion for a Protective Order, dkt. #124, and Motion to Quash, dkt. #126-1 are DENIED. Defendant's Motion for a Protective Order, dkt. #126, is denied as moot. Additionally, the Court orders the parties to meet and confer regarding ongoing discovery

14

disputes (including but not limited to the deposition disputes). The Court orders the parties to meet and confer via videoconferencing means and to record any such meetings. All future discovery motions shall include the relevant meet and confer recording as an attachment.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2. As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this **8th** day of **May, 2026** at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge